IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

F I L E D

NOV - 7 2007

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| Jamie White, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:07cv376 (CHM/TCB) |
| | ) | |
| Gene Johnson, | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION

Jamie White, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas

corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his conviction in the Circuit Court

for the City of Norfolk, Virginia, for robbery, wearing a mask in public, and use of a firearm in the

commission of a robbery. On July 16, 2007, respondent filed a Motion to Dismiss and Rule 5

Answer. White was given the opportunity to file responsive materials, pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed a response. For the reasons that follow,

White's claims must be dismissed.

**I. Background**

During the late night on May 14, 2004 and into the early morning hours of May 15, 2004,

Charles Holmes was at the Broadway Club in the City of Norfolk, Virginia. Resp't Ex. B, White

v. Commonwealth, R. No. 0285-05-1 (Va. Ct. App. Sept. 15, 2005) (per curiam). An armed, masked

man robbed Charles Holmes of a silver necklace. Holmes testified that he could see the robber's

eyes, the upper part of his face and his physique. Holmes also testified that the robber wore a dark

shirt. Natalie Gibson, Jamie White's former girlfriend, testified that she drove White, upon his

instructions, to an area near the Broadway Club. Gibson was the driver of the car and White and

White's brother were passengers. White exited the car and then returned approximately five minutes later with a silver necklace and a firearm. Gibson testified that White removed his dark shirt. After the robbery, Holmes got into his car and followed the car that the robber had entered. Police responded to Holmes' telephone call and followed the car. A video camera mounted on the dashboard of the police car showed an object being thrown from the side of the car as it crossed over a bridge. Police stopped the car and recovered a mask and Holmes' necklace from the front passenger seat. Holmes also identified White as the robber. A police dive team later recovered a firearm from the river near the bridge.

At trial, Holmes identified White, the front seat passenger, as the robber. Holmes admitted that he had identified the back seat passenger as the robber at the preliminary hearing. Holmes also testified that he "could have gotten it work as far as who was in the back seat," but that he was sure what White was one who robbed him. Id. at 3. White testified that he did not rob Holmes. White stated that Holmes had given him the necklace as payment for drugs and that he threw the drugs, not a gun, out of the passenger window. White also testified that he had the mask for playing "paintball."

On November 9, 2004, a jury in the City of Norfolk convicted White of robbery, wearing a mask in public, conspiracy, and use of a firearm in the commission of a felony. Commonwealth v. White, CR04002904/F04.[1] On January 31, 2005, the court sentenced petitioner to fourteen years in prison. White filed a direct appeal in the Court of Appeals of Virginia, challenging the trial court's denial of White's motion for a mistrial and motion to strike the evidence. On September 15, 2005,

---

[1] White had also been indicted for conspiracy, but on November 8, 2004, an entry of nolle prosequi was made with respect to this charge.

2

the Court of Appeals denied the petition for appeal. Resp't Ex. B, <u>White v. Commonwealth</u>, R. No. 0285-05-1 (Va. Ct. App. Sept. 15, 2005) (per curiam).  White appealed to the Supreme Court of Virginia, which refused the petition for appeal on January 23, 2006. Resp't Ex. C, <u>White v. Commonwealth</u>, R. No. 052129 (Va. Jan. 23, 2006).

White filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, claiming (1) that he was actually innocent on the basis of newly discovered evidence and (2) that counsel was ineffective for: (a) failing to call witnesses Kevin Barnes, Yolanda Scott, and White's brother; (b) failing to ask Natalie Gibson about cuts on her wrist, the word "hate" carved in her forearm, and whether she ever attempted suicide; (c) failing to object and move for a mistrial when Gibson testified that White "always" had a gun; (d) failing to object to "prosecutorial misconduct" (e) failing to question Holmes about his drug use; (f) failing to object to the statement given by the Commonwealth's Attorney during closing argument that Holmes was not "under the influence of anything;" (g) failing to object to the statement by the Commonwealth's Attorney during closing argument that police saw a gun "fly out" of the car; (h) failing to object to the statement given by the Commonwealth's Attorney during closing argument that White's testimony was not credible; and (i) failing to object to the statement given by the Commonwealth's Attorney during closing argument that White did not tell his "story" to the police upon arrest. On December 11, 2006, the Supreme Court of Virginia dismissed White's habeas petition. <u>White v. Dir. of the Dep't of Corr.</u>, R. No. 061396 (Va. Dec. 11, 2006). On June 7, 2007,[2] White filed the instant federal habeas petition,

---

[2] Petitioner filed his original petition and request to proceed in forma pauperis on March 27, 2007. By Order dated April 25, 2007, White's application to proceed in forma pauperis was denied, and the petition was dismissed without prejudice. White was given thirty days to pay the $5.00 filing fee. Petitioner paid the filing fee, and the petition was deemed filed on June 7, 2007.

raising the same claims he raised before the Supreme Court of Virginia on state habeas.

## II. Actual Innocence

In claim 1, White claims, as he did in his state habeas petition, that he is actually innocent of the charges for which he was convicted. Specifically, White claims that he is innocent on the basis of newly discovered evidence that shows that the testimony of Natalie Gibson was not credible. Unlike a claim challenging the sufficiency of the evidence, a claim of actual innocence is not itself a constitutional claim, rather it is a "gateway through which a habeas petition must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." Spencer v. Murray, 5 F.3d 758, 764 (4th Cir. 1993) (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)) (internal quotations omitted). "'Actual innocence[,]' therefore, is not a freestanding claim; rather, it is used to excuse a procedural error for an independent constitutional claim." Beck v. Angelone, 173 F.Supp.2d 461, 476 (E.D.Va. 2000) (quoting Herrera, 506 U.S. at 404-05); accord Royal v. Taylor, 188 F.3d 239, 243 (4th Cir. 1999) (federal habeas relief exists to correct constitutional defects, not factual errors). None of petitioner's claims is procedurally defaulted or otherwise barred from review on the merits. Accordingly, White's claim of actual innocence on the basis of newly discovered evidence is not a cognizable constitutional claim. Therefore, claim 1 will be dismissed. Because claim 2 has been properly exhausted and is not procedurally defaulted, it will be reviewed on the merits.

## III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an

4

unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Moreover, a federal court reviewing a habeas petition may not overturn a state court's factual conclusions unless it finds that the factual conclusions are not supported by the record. Maggio v. Fulford, 462 U.S. 111, 117 (1983) (citing 28 U.S.C. § 2254(d)(8)).

## IV. Merits

In claim 2, White alleges that he was denied effective assistance of counsel in nine different instances. With respect to his claims of ineffective assistance of counsel, White must show that (1) "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690 (1984) (defining ineffective assistance of counsel as falling below an objective standard of reasonableness and applying a strong presumption of competence and deference to attorney judgment), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The petitioner must show both deficient

5

performance and prejudice; the two are separate and distinct elements of an ineffective assistance claim." Spencer, 18 F.3d at 232-33.

Moreover, a court does not need to review the reasonableness of counsel's performance if petitioner fails to show prejudice. Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998). With respect to the first prong of the Strickland test, "[j]udicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, and the court must "presume that challenged acts are likely the result of sound trial strategy." Spencer, 18 F.3d at 233. With respect to the second prong of the Strickland test, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In order to undermine confidence in the trial outcome, petitioner must show more than a remote possibility that the results of the trial would have been different. Washington v. Murray, 4 F.3d 1285, 1290 (4th Cir. 1993).

In claim 2(a), White claims that he was denied effective assistance when trial counsel failed to call a Kevin Barnes, a Yolanda Scott, and White's brother as witnesses. Specifically, White contends that Barnes would have testified that he told Gibson that White had a girlfriend named Yolanda Scott and that, as a result of learning this information, Gibson became very angry with White. White contends that Scott would have testified that she was White's girlfriend and that Gibson was "mad" at White. Finally, White contends that his brother would have testified "corroborated [his own] testimony at trial," thereby rendering Gibson's testimony less credible. White argues that the testimony each of these persons would have given would have made Gibson's testimony less credible and that counsel rendered deficient performance in failing to call them as witnesses.

Relying on Strickland, the Supreme Court of Virginia held on state habeas that White had

demonstrated neither deficient performance nor prejudice as a result of counsel's failure to call these persons as witnesses. White v. Dir. of the Dep't of Corr., slip op at 2. The court found that the record, including the trial transcript, demonstrated that Gibson was angry with White for lying about a girl he was "still talking to." Id. The court also noted that White had not proffered any affidavits from Scott or from his brother to verify that they would have testified as he alleged they would.

In the instant federal petition, White has not included affidavits from his brother or Scott to verify that they would have testified as he claims they would. White's unsupported allegations are insufficient to demonstrate that counsel rendered ineffective assistance in failing to call these persons as witnesses. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (requiring that a habeas petitioner proffer with specificity what additional testimony counsel should have presented at trial and how, as a result of that testimony, the result would have differed). Moreover, the Supreme Court of Virginia found that the record demonstrated that Gibson was angry with White for his involvement with another woman. White, slip op. at 2. White neither challenges this finding as an unreasonable determination of the facts, nor does he establish how, in light of the fact that the record clearly indicated that Gibson was angry with him, the testimony of his brother and Scott would have changed the outcome of the trial.

With respect to the proffered testimony of Barnes, the Supreme Court of Virginia held that his testimony, as presented in an affidavit to that court, would have constituted inadmissible hearsay. White, slip op. at 2. In that affidavit, Barnes averred that Gibson got angry when he told her that White had another girlfriend and responded that she was not going to allow White to use her. Affidavit of Kevin Barnes, ¶ 3. However, the Supreme Court of Virginia found that Gibson was angry with petitioner, and under Virginia law, the prior statements of a witness are only admissible

7

if the witness denies having made the statement. See Faison v. Hudson, 417 S.E.2d 305, 309 (Va. 1992) (listing cases). Accordingly, trial counsel had no basis to impeach Gibson with her prior statements, and the Supreme Court of Virginia correctly concluded that counsel was not ineffective for failing to do so. Because petitioner has not demonstrated that any of the findings or legal conclusions of the Supreme Court of Virginia with respect to claim 2(a) were contrary to, or involved an unreasonable application of clearly established federal law or were based on an unreasonable determination fo the facts, claim 2(a) will be dismissed.

In claim 2(b), White contends that trial counsel was ineffective for failing to question Gibson about cuts on her wrist, the word "hate" carved into her forearm, and whether Gibson had ever attempted to commit suicide. The Supreme Court of Virginia found on state habeas that claim 2(b) satisfied neither prong of the Strickland two-part test. White, slip op. at 2. In a sworn statement submitted to the Supreme Court of Virginia on state habeas, White's trial counsel averred that White had never suggested any such questions to him and that such questions would not have been allowed as "proper" cross-examination. Statement of B. Thomas Reed, ¶ 2. An attorney's decision to cross examine a witness is an element of trial strategy which is not to be second-guessed on federal habeas review. See, e.g. Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978); Potts v. Hinkle, No. 7:06cv524 2007 WL 1577337, at * 4 (W.D.Va. May 31, 2007). Moreover, White has not established any prejudice resulting from trial counsel's failure to question Gibson on these matters. Accordingly, because White has not established that the decision of the Supreme Court of Virginia with respect to claim 2(b) was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts, claim 2(b) will be dismissed.

8

In claim 2(c), White contends that trial counsel was ineffective for failing to object or move for a mistrial when Gibson testified that White "always" had a gun and that she had served six years in prison because she would not testify against White in a previous proceeding. The Supreme Court of Virginia found on state habeas that the record, including the trial transcript, demonstrated that counsel did object to Gibson's comment that she had spent six years in jail for petitioner on the grounds that her response was not responsive to his question as to why Gibson was angry with White. White, slip op. at 2; see Trans. at 116-17. The trial court ruled that the answer was responsive to the question. Trans. at 117; Statement of B. Thomas Reed, ¶ 4. With respect to both statements, the Supreme Court of Virginia noted that neither statement, "without further explanation," constituted evidence of prior bad actions. White, slip op. at 3. Accordingly, the court found that White failed to establish either prong of Strickland's two-part test. Id. Petitioner has not established that the findings of Supreme Court of Virginia were unsupported by the record or based on an unreasonable determination of the facts. Moreover, petitioner has not established any prejudice as the result of counsel's failure to move for a mistrial in response to Gibson's statements. Accordingly, as the decision of the Supreme Court of Virginia with respect to claim 2(c) was neither based on an unreasonable determination of the facts nor was it contrary to or did it involve an unreasonable application of clearly established federal law, claim 2(c) will be dismissed.

In claim 2(d), White argues that trial counsel was ineffective for failing to object to "prosecutorial misconduct" in connection with Holmes' testimony during the trial. It appears that White is claiming that his trial counsel should have argued to the jury that someone in the office of the Commonwealth's Attorney told Holmes to change his testimony on the issue of whether the robber was seated in the front or back seat of the car. In its findings on this issue on state habeas the

Supreme Court of Virginia stated:

> The victim, Charles Holmes, testified at a preliminary hearing that identified the backseat passenger in the car, not [White], as the robber. [White] claims that, at trial, Holmes gave conflicting testimony, which was revealed on cross-examination. [White] alleges trial counsel successfully elicited Holmes' admission that someone in the Commonwealth's Attorney's office told Holmes to change his testimony. [White] contends that counsel failed, after the alleged admission, to raise the issue of prosecutorial misconduct before the jury.

White, slip op. at 4. The court concluded that White had failed to establish either prong of the Strickland two-part test. The court found that the record, including the trial transcript, demonstrated that trial counsel cross-examined Holmes about the discrepancy between his testimony at the preliminary hearing and his testimony at trial. Id.; see Trans. 163-66; Statement of B. Thomas Reed, ¶ 5. Accordingly, the court concluded that trial counsel had no basis upon which to make a claim of prosecutorial misconduct. White, slip op. at 4. Trial counsel is under no obligation to make frivolous arguments. See, e.g., Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (holding that counsel was under no duty to make a frivolous motion); United States v. Isaac, No. 1:05cv1053, 2006 WL 2038521, at * 3 & n.7 (E.D.Va. July 19, 2006). Moreover, White has established no prejudice resulting from counsel's failure to make the argument to the jury. Accordingly, as White has not established that the findings of the Supreme Court of Virginia were based on an unreasonable determination of the facts or that the court's determination was contrary to or involved an unreasonable application of clearly established federal law, claim 2(d) will be dismissed.

In claim 2(e), White contends that trial counsel was ineffective for failing to question Holmes about his drug use. Specifically, White alleges that Holmes' answer would have bolstered White's own testimony that Holmes exchanged his necklace with White for crack cocaine. In his statement

10

presented to the Supreme Court of Virginia on state habeas, trial counsel averred that he did not ask

Holmes whether he used drugs, but instead concentrated his questions on cross-examination on

Holmes' identification of the person who robbed him. Statement of B. Thomas Reed, ¶ 6. On state

habeas the Supreme Court of Virginia determined that White had not met either prong of the

Strickland two-part test with respect to claim 2(e). White, slip op. at 5. On the basis of the record,

including the trial transcript, and counsel's sworn statement, the court determined that trial counsel

"aggressively" questioned Holmes regarding his identification of White as the robber. Id. In the

instant petition, White has proffered no affidavit from Holmes indicating that he would have testified

as White suggests. See Bassette, 915 F.2d at 940-41. White's unsupported allegations are

insufficient to establish that counsel rendered deficient performance in questioning Holmes. See also

Sallie, 587 F.2d 640; Potts, 2007 WL 1577337, at * 4. Moreover, even if White had established that

Holmes would testify as he suggests, he has not established with reasonable probability that Holmes'

testimony would have altered the outcome of the trial. Strickland, 466 U.S. at 694. As petitioner

has not established that the decision of the Supreme Court of Virginia with respect to claim 2(e) was

contrary to or involved an unreasonable application of clearly established federal law or was based

on an unreasonable determination of the facts, claim 2(e) will be dismissed.

Finally, in claims 2(f)-(i), White contends that trial counsel was ineffective for failing to

object to certain statements given by the Commonwealth's Attorney during closing argument. In

claim 2(f), White alleges that trial counsel was ineffective for failing to object when the

Commonwealth's Attorney argued that "Holmes was not under the influence of anything" as no

evidence supported that statement. In claim 2(g), White alleges that counsel was ineffective for

failing to object when the Commonwealth's Attorney stated in closing argument that police saw a

11

"gun fly out" of the car White rode in. In claim 2(h), White alleges that counsel was ineffective for failing to object when the Commonwealth's Attorney insinuated during closing argument that White's testimony was not believable because he had previously been convicted of five felonies, three crimes of moral turpitude and was an acknowledged drug dealer. In claim 2(i), White alleges that counsel was ineffective for failing to object when the Commonwealth's Attorney insinuated during closing argument that White made up the "story" told on the witness stand because he did not tell it to police when was arrested.

On state habeas, the Supreme Court of Virginia held that White failed to satisfy either prong of the Strickland two-part test with respect to claims 2(f) through 2(i). White, slip op. at 5-8. With respect to claim 2(f), the Supreme Court of Virginia found that the record, including the trial transcript, demonstrated that the Commonwealth's Attorney's remark was a "proper inference" based on Holmes' testimony that he had nothing to drink while at the Broadway Club before the robbery. Id. at 6. White does not challenge this factual finding as an unreasonable determination of the facts, and the state habeas court's finding was not based on an unreasonable interpretation of federal law, as an attorney's decision to object to statements made during closing argument is a matter of trial tactics and strategy not to be second-guessed on federal habeas review. See Hansford v. Angelone, 224 F.Supp.2d 606, 613 (E.D.Va. 2002). Moreover, White has not established any prejudice resulting from trial counsel's failure to object to the statement of the Commonwealth's Attorney. Accordingly, as the findings and conclusions of the Supreme Court of Virginia with respect to claim 2(f) were neither contrary to, or involved an unreasonable application of clearly established federal law, nor were they based on an unreasonable determination of the facts, claim 2(f) will be dismissed.

With respect to claim 2(g), the Supreme Court of Virginia found on state habeas that the

12

record, including the trial transcript, demonstrated that the Commonwealth's Attorney's statement during closing argument that police saw "a gun fly out" was properly based upon the evidence presented at trial, as Holmes and Gibson both testified that White had a gun when he committed the robbery and two officers testified to seeing a "silver object" come out of the passenger side of the car as it traveled over the bridge. White, slip op. at 6. The court also noted that a handgun was later recovered from the water underneath the bridge. Id. at 6-7. White does not contend that the court's findings were based on an unreasonable determination of the facts. Moreover, in exercising his discretion to refrain from objecting to this statement by the Commonwealth's Attorney, White's trial counsel did not render deficient performance, as "[c]onstitutionally effective assistance does not require the assertion of every possible ... objection." Moore v. United States, 934 F.Supp. 724, 727 (E.D.Va. 1996), quoted in Hansford, 244 F.Supp.2d at 613.[3] Moreover, White has failed to demonstrate the prejudice resulting from counsel's failure to object. Accordingly, as White has not shown that the decision of the Supreme Court of Virginia with respect to claim 2(g) was based on an unreasonable determination of the facts or was contrary to or involved an unreasonable application of clearly established federal law, claim 2(g) will be dismissed.

With respect to claim 2(h), the Supreme Court of Virginia found on state habeas that the statement by the Commonwealth's Attorney that White's testimony was not believable because he had "five felonies, three crimes of moral turpitude and [was] an acknowledged drug dealer" was proper under Virginia law, which allows a prosecutor to impeach with his prior convictions a

---

[3] "Indeed, it is frequently better to remain silent rather than to draw attention to the matter," Hansford, 244 F.Supp.2d at 613 (citing Moore, 934 F.Supp. at 727), as an objection to a prosecutor's arguments may only serve to emphasize them. Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989).

defendant who chooses to testify. <u>White</u>, slip op. at 7; <u>see</u> Va. Code § 19.2-269; <u>Johnson v. Commonwealth</u>, 298 S.E.2d 99, 101 (Va. 1982). Accordingly, the court concluded that White's trial counsel had no grounds upon which to object to this statement by the Commonwealth's Attorney. White does not establish that the findings of the Supreme Court of Virginia with respect to claim 2(h) were based on an unreasonable determination of fact. Moreover, trial counsel does not render constitutionally deficient assistance by failing to make a frivolous objection, <u>see</u> <u>Moody</u>, 408 F.3d at 151; <u>Isaac</u>, 2006 WL 2038521, at * 3 & n.7, and, in any event, White has not established any prejudice resulting from counsel's failure to object. Accordingly, as White has not shown that the decision of the Supreme Court of Virginia with respect to claim 2(h) was based on an unreasonable determination of the facts or was contrary to or involved an unreasonable application of clearly established federal law, claim 2(h) will be dismissed.

Finally, with respect to claim 2(i), the Supreme Court of Virginia concluded on state habeas that counsel was not ineffective for failing to object when the Commonwealth's Attorney "insinuated" during closing argument that White made up the "story" he told during his trial testimony because he did not tell it to police when he was arrested. <u>White</u>, slip op. at 8. White appears to contend that the Commonwealth's Attorney improperly penalized him for exercising his constitutional rights and that trial counsel was ineffective for failing to object during closing argument. The Supreme Court of Virginia found, however, that the Commonwealth's Attorney's remarks only referenced White's pre-<u>Miranda</u> silence in order to impeach him. <u>Id.</u> White does not establish that the court's finding on this issue was based on an unreasonable determination of the facts. Additionally, the court's decision was neither contrary to or based on an unreasonable application of clearly established federal law. While a prosecutor may not reference a defendant's

14

post-Mirdanda silence during closing argument to impeach that defendant's testimony, providing an

"exculpatory version of the events in question," he is perfectly free to use the defendant's pre-

Miranda silence, whether it occurred before or after arrest, for that purpose.  Buckner v. Polk, 453

F.3d 195, 208 (4th Cir. 2006) (citing Doyle v. Ohio, 426 U.S. 610, 619 (1976)); see also Fletcher v.

Weir, 455 U.S. 603, 607 (1982) (per curiam) (holding that the Doyle prohibition does not apply to

post-arrest, pre-Miranda silence).  Moreover, White has not established any prejudice resulting from

trial counsel's failure to object the Commonwealth's Attorneys' lawful reference.  Accordingly,

claim 2(i) will be dismissed.

### V.  Conclusion

For the above reasons, respondent's Motion to Dismiss will be granted, and this petition will

be dismissed.  An appropriate Order shall issue.

Entered this _7th_ day of _November_ 2007.

_/s/_
Claude M. Hilton
United States District Judge

Alexandria, Virginia

15